UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, LOCAL NO. 264 AND 375

                Plaintiff,

      v.                                             **DECISION AND ORDER**
                                                              11-CV-186S

NASON'S DELIVERY, INC.,

                Defendant.
_____

## I. INTRODUCTION[1]

Presently before this Court are motions for a preliminary injunction and temporary restraining order.[2] These motions are brought by Plaintiffs International Brotherhood of Teamsters, Local No. 264 and 375's ("Unions" or "International Brotherhood") to enjoin Defendant Nason's Delivery, Inc. ("Nason's") from liquidating its assets and petitions this Court to confirm an arbitration award pursuant to the Federal Arbitration Act, 9 U.S.C. § 9.[3] Nason's counter-petitions to vacate the arbitration award on the grounds that the award was not definite and final, failed to give adequate notice, failed to comply with the arbitration agreement, exceeded the arbitral tribunal's authority, and was irrational. This

---

[1] Because this case reaches this Court by a Notice of Removal (Docket No. 1) from the New York State Supreme Court, Erie County pursuant to 28 U.S.C. §§ 1441 and 1446, parties are properly presented as Petitioners and Respondent. However, because the parties refer to themselves as Plaintiffs and Defendant in all subsequently filed papers, this Decision and Order shall similarly refer to Petitioners as Plaintiffs and Respondent as Defendant.

[2] In support of its Motion for a Preliminary Injunction, International Brotherhood relies on the state court documents filed with the Notice of Removal, a memorandum of law, Attorney Declarations by John M. Lichtenthal, Esq. with Exhibits, and a Second Affidavit of Allen Hauri. (Docket Nos. 1, 3, 8, 17.) In opposition to the Unions' motion, Nason's files a memorandum of law, the Affidavit of Thomas G. Eron, Esq., and the Affidavit of Thomas Nason. (Docket Nos. 9-11.)

[3] Previously, this Court granted Plaintiffs' motion to expedite Plaintiff's Petition to Confirm Arbitration Award. (Docket No. 5.)

Court heard oral argument on the Unions' motion on April 1, 2011 and reserved decision at that time. For the reasons stated below, the Unions' motion for a preliminary injunction and temporary restraining order is denied.

## II.  BACKGROUND

**A.    Facts**

Plaintiffs are labor organizations based in Cheektowaga and Buffalo, NY. Each has a collective bargaining agreement ("CBA") with Defendant. Defendant is a private trucking company, located in Springville, NY, which was actively in business until September 24, 2010, after which it ceased all ordinary business operations on September 27, 2010.

Plaintiffs claim that on September 24, 2010, Defendant, without notice, ceased trucking operations and terminated all employees. In October 2010, Plaintiffs filed two grievances based on no notice of termination, no pay for vacation time, roving holidays, and 2009 and 2010 personal days. Plaintiffs sought all monies owed, with penalty fees, and accrued penalties. Plaintiffs submitted the grievances to the New York State Joint Area Committee ("NYSJAC") for a hearing and notified Defendant by October 12, 2010 of the hearing. Plaintiffs also requested pay records and documents listing vacation and roving days owed. Defendant did not turn over any records.

On November 6, 2010, counsel for the parties met to address and resolve the grievances, but failed to come to an agreement. A hearing was held before NYSJAC on December 21, 2010, and Defendant failed to appear. NYSJAC sustained both grievances. The grievances were submitted for resolution, with hearings before the Eastern Region Joint Area Committee ("ERJAC") on January 25, 2011. Defendant again failed to appear and the grievances were again sustained.

**B.     Procedural Background**

On February 22, 2011, Plaintiffs commenced this action in New York State Supreme Court, Erie County, by filing a Petition to Confirm Arbitration Award and Order to Show Cause.  In the petition, Plaintiffs allege entitlement to relief pursuant to a CBA under the Labor-Management Relations Act.  In their underlying Petition to Confirm the Arbitration Award, Plaintiffs seek (1) an order upholding and enforcing the grievance hearing decisions and (2) an order requiring disclosure of the documents for calculating monies owed.  The court scheduled an Order to Show Cause appearance for March 8, 2011, to show why a temporary restraining order to freeze Defendant's assets and/or an Order of Attachment should not be granted against Defendant, or, why the proposed Petition to Confirm Arbitration Award should not be granted.  Defendant then filed its Notice of Removal on March 7, 2011.

On March 14, 2011, Plaintiffs filed a Motion for an Expedited Hearing, which this Court granted in so far as providing the parties an early opportunity to make oral arguments on the motion for a temporary restraining order and preliminary injunction.  On March 18, 2011 counsel for parties made oral arguments and this Court reserved judgment at that time.

### III.  DISCUSSION

**A.     Legal Standard**

Plaintiffs move for a temporary restraining order and injunctive relief.  "The standards for a TRO are the same as those governing the granting of preliminary injunctive relief."  Roberts v. Atl. Recording Corp., 892 F. Supp. 83, 86 (S.D.N.Y. 1995); see also

Schiavone Const. Co. v. New York City Transit Auth., 593 F.Supp. 1257, 1261 n.10 (S.D.N.Y. 1984) ("In view of the notice and opportunity to be heard which were afforded to the parties in this action, we consider it appropriate to analyze plaintiffs' application for a temporary restraining order under the standards governing the granting of preliminary injunctive relief.")

A preliminary injunction "is an extraordinary and drastic remedy which should not be routinely granted." Med. Soc'y of New York v. Toia, 560 F.2d 535, 538 (2d Cir. 1977); see also Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh, 934 F.2d 30, 33 (2d Cir. 1991). The standard for obtaining a preliminary injunction is well established in the Second Circuit:

> "[a] party seeking a preliminary injunction must demonstrate '(1) irreparable harm should the injunction not be granted, and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief.'"

N.A.A.C.P., Inc. v. Town of East Haven, 70 F.3d 219, 223 (2d Cir. 1995) (quoting Resolution Trust Corp. v. Elman, 949 F.2d 624, 626 (2d Cir. 1991)); see also Merkos v. Otsar, 312 F.3d 94, 97 (2d Cir. 2002).

**B.     Motion for Preliminary Injunction and Temporary Restraining Order**

**1.     Irreparable Harm**

"A showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009) (quoting Rodriguez v. DeBuono, 175 F.3d 227, 234 (2d Cir. 1999)). Irreparable harm requires plaintiffs to demonstrate that "absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve

4

the harm." Id. (quoting Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007). An injury that can be fully remedied by monetary damages does not constitute an irreparable harm. See id. (quoting Moore v. Consol. Edison Co. of N.Y., 409 F.3d 506, 510 (2d Cir. 2005)). However, an exception to this rule is where defendant is insolvent or insolvency is threatened. Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co., CV-07-2005, 2007 WL 1580085, at *3 (E.D.N.Y. May 30, 2007).

Here, International Brotherhood contends that it will suffer irreparable harm that cannot be compensated by money damages because Defendant is liquidating assets outside the structure of a bankruptcy proceeding and intends to deprive the Unions of the benefits due under the CBA and arbitral award. (Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Injunction ("Pls.' Mem."), Docket No. 8, 6-7.) The Unions fail however to allege facts demonstrating that Nason's actually has this intent. Plaintiffs point out that Defendant contracted with an on-line auctioneer to sell its assets a mere four days after receiving notice of Plaintiffs' action to confirm the arbitration award. Even so, an inference that Nason's is acting in bad faith is highly speculative, especially as Defendant's other conduct evidences an intent to use the funds to dispose of its financial obligations to creditors, as well as its former employees.

Defendant has engaged in negotiations with the Unions regarding the sale of its assets. Defendant has also stated that employees' claims for accrued unused vacation, sick, and personal days were second in payment priority, immediately after the secured lender to whom Defendant owes approximately $135,000 out of its total estimated assets of $700,000. (Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for a Preliminary Injunction ("Def's Mem."), Docket No. 9, 6.) Moreover, the fact that Defendant

did contract with an auctioneer, rather than dispose of all its assets through private dealings contradicts the impression that Defendant has a nefarious purpose.

Because Plaintiffs have not shown that any injury they suffer could not be compensated by money damages, and because there is no indication of Defendant's intention to act so as to preclude Plaintiffs from recovering, Plaintiffs have not suffered irreparable harm. See Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d at 118. On this basis alone, the Motion for Preliminary Injunction and Temporary Restraining Order must be denied.

### 2. Likelihood of Success on the Merits

Even if Plaintiffs could demonstrate an irreparable harm, they have not shown a likelihood of success on the merits. Determining whether this prong has been met often requires courts to judge the merits of the case at a very preliminary stage of the litigation. It is perhaps because of this preliminary posture that when coupled with a demonstration of irreparable harm, the movant need only establish that his likelihood of success on the merits is more probable than not. As the Second Circuit has stated:

> A movant seeking to avail himself of the first alternative [likelihood of success on the merits] need not show that success is an absolute certainty. He need only make a showing that the probability of his prevailing is better than fifty percent. There may remain considerable room for doubt.

Eng v. Smith, 849 F.2d 80, 82 (2d Cir. 1988) (quoting Abdul Wali v. Coughlin, 754 F.2d 1015, 1025 (2d Cir. 1985)); see also Connor v. New York State Comm'n on Judicial Conduct, 260 F. Supp. 2d 517, 520 (N.D.N.Y. 2003); Tremper v. Ulster County Dep't of Prob., 160 F. Supp. 2d 352, 356 (N.D.N.Y. 2001); Varsames, 96 F. Supp. 2d at 366.

It is with this standard in mind that this Court examines whether Plaintiff's petition to confirm an arbitral award is likely to succeed. The Unions allege that § 9 of the Federal Arbitration Act, 9 U.S.C. § 9, requires this Court to confirm the awards rendered by the NYSJAC and ERJAC unless Defendant can demonstrate a statutory basis for vacating or modifying the award. (Pls.' Mem. 8.) Defendant responds that it did not receive proper notice of the arbitral proceeding, the award is neither final nor definite, Defendant is not bound by the CBA, and that the Unions have failed to comply with New York General Associations Law. (Def.'s Mem 7-8.)

Federal policy favors enforcing arbitration awards in labor disputes as long as the arbitrator's decision "is even arguably construing or applying the contract and acting within the scope of his authority." Teamsters Local 814 Welfare Fund, 2007 WL 1580085, at *2. Arbitration awards are reviewed for manifest disregard of the law. Greenberg v. Bear, Stearns & Co., 220 F.3d 22, 28 (2d Cir. 2000). Federal Courts often look to the Federal Arbitration Act for guidance in labor arbitration cases. United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 41 n.9, 108 S. Ct. 364, 372, 98 L. Ed. 2d 286 (1987). Under this act, an arbitral award may be vacated on any of the following grounds:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators . . .;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing . . . or in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

Defendant argues that the arbitration award cannot be enforced because Nason's did not receive proper notice of the arbitration proceeding. Courts have interpreted 9

7

U.S.C. § 10(a)(3) to mean that "except where fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review." Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d cir. 1997). Fundamental fairness requires, however, that the arbitrator gives each party adequate opportunity to present its evidence and arguments. See id.

Nason's concedes that it had notice of the December 21, 2010 arbitration, but alleges that the Unions did not provide it with advance written notice of the January 25, 2011 hearing date. (Affidavit of Thomas G. Enron, Esq., Docket No. 10, ¶ 5.) However, a USPS shipping notice, as well as a series of email communications strongly suggest that notice was sent informing Defendant of the January 25, 2011 meeting. (Declaration of John M. Lichtenthal, Esq. ("Lichtenthal Decl."), Docket No. 17, Ex. C.) The weight of the evidence is therefore in favor of the Unions showing that Defendant received adequate notice.

Defendant further argues that the arbitration award is not final and definite and, as a result, unenforceable. (Def.'s Mem. 7-8.) "A contradictory, ambiguous, or incomplete award also provides courts with limited grounds to vacate, modify, or correct an award, or to remand the award to the arbitration panel for clarification." Folkways Music Publishers, Inc. v. Weiss, 90 Civ. 6514, 1992 WL 230192, at *5 (S.D.N.Y. Aug. 31, 1992) (citing Ottley v. Schwartzberg, 819 F.2d 373, 376 (2d Cir. 1987)). "[I]n order for a claim to be completely determined, the arbitrators must have decided not only the issue of liability of a party on the claim, but also the issue of damages." Esso Exploration and Prod. Chad, Inc. v. Taylors Int'l., Ltd., 293 Fed. Appx. 34, 36 (2d Cir. 2008) (quoting Michaels v. Mariforum Shipping, 624 F.2d 411, 413-14 (2d Cir. 1980)).

Here, the arbitrators issued a series of decisions in which "the claim of the Union is upheld." (See, e.g., Notice of Removal ("Removal Notice"), Docket No. 1, Ex. 12.) The December 21, 2010 decision by the NYSJAC granted the Union's claim, which "[a]lleged violations of Articles 48, 49, 50, 51, 64(3), 68(4), 71 and White Paper Agreement . . . . Union seeks all monies owed to members plus all monies owed the Teamsters Health, Hospital and Pension Fund for each member claiming Company ceased operations with little notice to employees." (Id. at Ex. 9.) The second decision granted relief on the claim that the Union had "not received requested payroll information from Company as of this date." (Id. at Ex. 10.) The third decision granted relief for violations of Articles 49, 68, 69, and all applicable provisions on the Union's claim that Defendant "did not pay employees vacation time for 2009 or 2010 for holidays not taken and Company did not notify employees they were being laid off; amount unknown, still waiting for information." (Id. at Ex. 11.) Lastly, on January 25, 2011 ERJAC granted the Union's claimed violations of "Articles 23, 38, and all other applicable articles" as well as "(8) hours pay for every day delayed for every member claiming information requested and sick days owed." (Id. at Ex. 12.) The same award states, "a majority decision of the Eastern Region Joint Area Committee in the above dispute will be final, conclusive and binding with no appeal and, further, that neither party will attempt through any overt acts to void the decision rendered." (Id.)

In light of the language of the above decisions granting the Unions' claims, this Court cannot agree that the awards are ambiguous or provide no clear instruction on how this Court should proceed. Specifically, the fourth decision provides the formula of eight hours pay, per member claiming information and sick days owed, per day Defendant fails

9

to comply with the arbitrators' decision.  Defendant has not alleged that it is unclear what information was requested by Plaintiffs.  Moreover, the fact that penalties are scaled according to the amount of time Defendant delays complying may make the award unlike those awards in which a lump sum is awarded, see NYKcool A.B. v. Pac. Fruit. Inc., 10 Civ 3867, 2010 WL 4812975, at *10 (S.D.N.Y. Nov. 24, 2010), but does not change the fundamental fact that the amount ultimately owed is based on Defendants own actions. Accordingly, this Court concludes that Plaintiffs would likely be successful in countering Defendant's claim that the award is unenforceable on the basis of ambiguity and indefiniteness.

Additionally, Defendant claims that it never negotiated or signed the National Master Freight Agreement.  (Def.'s Mem. 9.)  An employer may adopt an unsigned collective bargaining agreement by complying with its terms.  Seabury Const. Corp. v. District Council of N.Y. & Vicinity of United Bhd. of Carpenters & Joiners of Am., 461 F. Supp. 2d 193, 199 (S.D.N.Y. 2006).  Here, Plaintiffs have submitted an employee affidavit to the effect that Nason's would refer employees' with questions to the agreement.  (Lichtenthal Decl., Affidavit of Mark Tuttle, ¶ 13.)  Defendant itself, in objecting to the Unions' scheduling of arbitration, did not allege that it was not a party to the agreement, but rather that unilateral scheduling was improper under that arbitration panel's rules of procedure.  (Notice of Removal, Ex. 8.)  This court concludes that Plaintiffs have submitted sufficient evidence to establish a strong likelihood of success in showing that Nason's is bound by the disputed agreement.

Nevertheless, this Court must conclude that Plaintiffs would ultimately not be successful on the merits of this case.  Defendant argues that Plaintiffs have not complied

10

with § 12 of the New York General Associations Law.  That provision "grants unincorporated associations capacity to sue through their president, treasurer, or equivalent officer."  CA-POWZ v. Town of Greece, 10-CV-6035, 2010 WL 3663409 (W.D.N.Y. Sept. 14, 2010), at *4 (W.D.N.Y. 2010).  Plaintiffs do not allege that this suit is brought by either of the three individuals empowered to bring suit.  Instead, Plaintiffs remind this Court that it was Defendants who chose to remove this matter from state to federal court, and that "[h]ad Defendant truly wanted to test Plaintiffs' right to commence this action, it would have left the matter in state court." (Lichtenthal Decl. ¶ 26.)  However, Defendant has raised this issue at a sufficiently early stage by raising it in its Amended Answer, (Amended Answer, Docket No. 6, Paragraph 22.)  See Booth Oil Site Admin. Group v. Safety-Kleen Corp., 532 F. Supp. 2d 477, 496 (W.D.N.Y. 2007).  Moreover, although this matter is now before a federal district court, Federal Rule of Civil Procedure 17 is inapplicable where state law already provides a means by which an unincorporated association may sue.  CA-POWZ, 2010 WL 3663409, at *2.

   Plaintiffs do not dispute that neither the president, treasurer, nor equivalent officer brings the present action.  Consequently the Court must conclude that, on the present facts, Plaintiffs are unable to demonstrate the capacity to sue on Local 264 and 375's behalf.  Nevertheless, this Court notes that "the filing of a lawsuit 'in the name of the unincorporated association alone, and not through its president or treasurer, or an officer who executes equivalent functions . . . is not a fatal defect and can be corrected' by filing an Amended Complaint in the name of the appropriate officer." Booth Oil Site Admin. Group, 532 F. Supp. 2d at 496 (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n

v. City of Albany, 250 F. Supp. 2d 48, 62 (N.D.N.Y. 2003)).  Until such a time, however, Plaintiffs' claims do not demonstrate a likelihood of success on the merits.

### 3.    Balance of Hardships

Plaintiffs have only argued that they would suffer an irreparable harm and likely be successful on the merits.  (Pls.' Mem. 8.)  Even if Plaintiffs were to allege that there are "sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief" Plaintiffs' motion would be denied. N.A.A.C.P., Inc., 70 F.3d at 223 (quoting Resolution Trust Corp., 949 F.2d at 626).  As previously discussed, Plaintiffs have not presented evidence sufficient to show that Defendant intends to dispose of its assets such as to escape any obligations it may have remaining to Plaintiffs.  Furthermore, this Court has found that Plaintiffs would likely be successful on the issues of notice, definiteness, and adoption.  However, Plaintiffs have not provided this Court with any evidence demonstrating that an individual recognized by New York General Associations Law § 12 has brought this suit.  Consequently, this Court also cannot conclude that there are serious questions going to the merits.

### IV.  CONCLUSION

At this stage, this Court's inquiry is limited to whether International Brotherhood has demonstrated an irreparable harm, and either a likelihood of success on the merits, or sufficiently serious questions going to the merits as to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor.  As this Court concludes that Plaintiffs have not identified an irreparable harm whose danger necessitates a preliminary injunction, Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction is denied.

This Court reserves judgment on Plaintiffs' petition to confirm the arbitral award and Defendant's counter-petition to vacate until the parties have conducted discovery on the questions of (1) whether Plaintiffs' suit is brought by Local 264 or Local 375's president, treasurer, or other equivalent officer, (2) whether Defendant had adequate notice of the January 25, 2011 arbitral proceeding, and (3) Plaintiffs' benefits allegedly due under the terms of the CBA.  See Matter of Arbitration between Bowen and 39 Broadway Assocs., 91 Civ. 4673, 1992 WL 73480, at *12 (S.D.N.Y. Apr. 2, 1992).

### V.  ORDERS

IT HEREBY IS ORDERED, that Plaintiffs' Motion for a Preliminary Injunction/ Temporary Restraining Order (Docket No. 3) is DENIED.

SO ORDERED.

Dated:   August 31, 2011
        Buffalo, New York

                                              /s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                              Chief Judge
                                              United States District Court